Isagani P. Dela Peña, Jr.

Fed. Reg. No. 00944-093

P. O. Box 019001

Atwater, CA 95301-0910



FILED
DISTRICT COURT OF GUAM
AUG 15 2005
MARY L.M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

Isagani P. Dela Peña, Jr.,

    Petitioner,

vs.

United States of America,

    Respondent.

Criminal Case No. 00-00126

Civil Case No. 04-00004

NOTICE OF APPEAL

Comes now Isagani Dela Peña, petitioner pro se in the above-entitled action, and hereby gives notice that he appeals to the United States Court of Appeals for the Ninth Circuit from the final order of the U. S. District Court for the Territory of Guam, Senior Judge Robert M. Takasugi sitting by designation, denying petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC §2255. The order was entered on 7 July 2005 and received by petitioner on 19 July 2005, neither marked nor treated as legal mail.

DATE: 8-8-05

                              *Isagani Dela Peña*

                              Isagani Dela Peña, Jr.

Isagani P. Dela Peña, Jr.

Fed. Reg. No. 00944-093

P. O. Box 019001

Atwater, CA 95301-0910

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| Isagani P. Dela Peña, Jr.,<br><br>    Petitioner,<br><br>vs.<br><br>United States of America,<br><br>    Respondent. | Criminal Case No. 00-00126<br>Civil Case No. 04-00004 |

MOTION FOR CERTIFICATE OF APPEALABILITY

    Comes now Isagani Dela Peña, petitioner pro se in the above-entitled action, and hereby requests that this court issue a certificate of appealability (COA) regarding grounds raised in his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC §2255 and upon which relief was denied in the court's order of 7 July 2005. Petitioner received the order on 19 July 2005, neither marked nor treated as legal mail.

    The issues from his §2255 motion petitioner requests that the court include in its certificate of appealability are as follows: (1) whether petitioner was denied his Sixth Amendment right to a speedy trial; (2)

whether petitioner was denied his Fifth Amendment right not to incriminate himself by testimony that he requested a lawyer and remained silent during a custodial interrogation; (3) whether petitioner's Fifth Amendment right to due process was violated by the court's failure to give accomplice jury instructions 4.10 or 4.11 or an adequate analogue; (4) whether the firearm siezed from a residence in which petitioner lived sufficiently impacted interstate commerce to confer subject matter jurisdiction on the court; (5) whether petitioner's Sixth Amendment right to counsel was violated by trial counsel failing to raise the foregoing issues at trial; and (6) whether petitioner's Sixth Amendment right to counsel was violated by appellate counsel failing to raise the same issues on appeal.

28 USC §2253(c)(2) states: "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a consitutional right." Federal Civil Judicial Procedure and Rules, West Group, 2003 Edition. "The Supreme Court recognized that the 'substantial showing' standard for a COA is relatively low and is the same as the prior standard for issuance of a CPC [certificate of probable cause] apart from the requirement that the court identify specific appealable issues. This standard permits appeal where petitioner can 'demonstrate that the issues are debateable among jurists of reason; that a court could resolve the issues [differently]; or that the questions are adequate to deserve encouragement to proceed further.'" (citations omitted) <u>Jennings vs</u>.

2

Woodford, 290 F.3d 1006, 1010 (9 Cir. 2002). Petitioner shows below that he meets at least one and arguably all three of these criteria with respect to each of the foregoing issues.

The nature of the penalty is also a proper consideration in determining whether to issue a COA. Petitioner was sentenced to more that 30 years for being no more than a petty drug addict on the periphery of others' larger conspiracy who the real players offered up to the government to bargain away their own liability. Petitioner must actually serve over 26 of those years--if he manages not to lose any good conduct time. Such a heavy penalty argues in favor of a COA in furtherance of the fullest possible review prior to finalization of the convictions and so draconian a sentence.

Finally, the court must resolve doubts about the propriety of a COA in the petitioner's favor. Jennings, supra, Lambright vs. Stewart, 220 F.3d 1022, 1025 (9 Cir. 2000)(en banc).

(1) Speedy Trial Act Violation. Two issues are outstanding here, each of which shows a substantial liklihood that petitioner's constitutional right to a speedy trial was violated.

One is whether the 26 February 2001 appointment of attorney Jehan'ad Martinez nunc pro tunc to 7 November 2000 created the legal reality of continuity in petitioner's representation and in so doing also wiped out all the other machinations regarding counsel for petitioner. The court's order denying petitioner relief on this ground merely asserts

3

that that logic fails, but cites no authority for that conclusion. It contends the order was issued only to get Martinez paid for previous work on the case as well as reappointed as petitioner's representative. But it cites no authority for the proposition that it can make such an appointment for some purposes and not for others, unintended though the others may be. Petitioner also has been unable to find any support for such a use of a nunc pro tunc order.

The second is that even the trial court was very concerned that postponement of petitioner's trial past 9 April 2001 to 25 April 2001 would result in a Speedy Trial Act violation. During a hearing on 9 April 2001, the court acknowledged there was a problem not eliminated by subtracting excludable days, for which Judge Umpingco chided defense counsel: "[A]nd this alarmed me--he [defense counsel] said to the court: 'I want to make some motions, but my client won't let me because he doesn't want his trial postponed.'... Why is the client running the business here?" Judge Umpingco then fashioned his own remedy: "We'll begin vior dire, because technically that tolls speedy trial, so we don't have to worry abut Mr. Isagani's not wanting to extend the trial; it's beyond his control. Now it's the court's calendar that plays the role." (9 April 2001 Order to Show Cause Hearing, pgs. 7 and 28).

These circumstances demonstrate that petitioner's speedy trial issue is debatable among jurists of reason. Judge Umpingco felt that there was a speedy trial problem that could be corrected as above while Judge Takasugi, author

4

of the court's 7 July 2001 order denying petitioner's §2255 motion, felt there was not--with or without Judge Umpingco's solution.

Moreover, <u>U. S. vs. Nance</u>, 666 F.2d 353, 359-60 (9 Cir. 1982)(Neither congested court calendar nor the press of other business can excuse delay under the Act.) and <u>U. S. vs. Scaife</u>, 749 F.2d 338, 343 (6 Cir. 1984)(If a district court attempts to evade the spirit of the Act by conducting voir dire within the 70 day period and then ordering a recess, it violates the Act.) show that courts could reach different conclusions than either Judge Takasugi or Judge Umpingco regarding Judge Umpingco's attempt to circumvent the Act. And <u>U. S. vs. Henderson</u>, 476 U.S. 321, 330 (1986), shows a debatability at least between its authors and Judge Takasugi about how to count days excludable due to pending motions and that courts could reach different conclusions about what days are excludable in a case such as this.

The foregoing demonstrates further that petitioner should be encouraged to proceed toward resolution of the debatability and potential for different conclusions. Accordingly, petitioner should be granted a COA regarding the speedy trial issue.

(2) Fifth Amendment Self Incrimination Violation. Petitioner's claim that the use of his in-custody silence and request for an attorney during trial is a question of law--or at least a mixed question of law and fact--and so should be reviewed de novo. <u>Seide vs. Merkle</u>, 146 F.3d 750, 753 (9 Cir. 1998). Petitioner's complaint, however, meets the more

5

exacting plain error stadard of <u>U. S. vs. Olano</u>, 507 U.S. 725, 732-735 (1993) because: (1) an error occurred; (2) the error is plain; (3) the error affected substantial rights in that it prejudiced the proceedings; and (4) it seriously affected the fairness of the proceedings.

The order denying petitioner's §2255 motion concedes, ad arguendo, the first two elements of the plain error standard were met. It predicates its denial on petitioner's alleged failure to demonstrate that the error affected the outcome of the district court proceedings. To do so, it seeks to minimize the impact of the testimony by citing its brevity and magnify the other evidence allegedly corroborating petitioner's guilt. It claims the result rendered the testimony incidental. That, however, requires a selective interpretation of evidence whose significance is debatable and could have sustained a different conclusion.

The questioning of petitioner occurred when he accompanied his girlfriend to an airport to pick up a shipment of auto parts in which methamphetamine had been secreted. Agents took Dela Pena and the girlfriend into custody and questioned them. The woman admitted the drugs were hers and did not incriminate petitioner. Petitioner asserted his right to remain silent and was released.

The order does not mention that the gun and other purportedly incriminating physical evidence were seized later from the home petitioner shared with this woman and spoke more to drug use than distribution. The wire tap conversations, wire transfers, and hotel and phone records

6

were only incriminating on the assumption of petitioner's involvement in the distribution scheme. Absent that assumpton, an at least equally plausible interpretation of the evidence was that petitioner's involvement in the scheme was only through social connection with its participants and perhaps their willingness to feed his drug habit.

Objectively, the evidence put petitioner on a knife edge between being a full and active participant and a non-participant hanger-on. In this situation, apprising the jury of a seemingly self-incriminating word or action by petitioner himself was the difference between a reasonable doubt and conviction. Given the popular conception of street-wise criminals knowing their "rights" and thwarting police by asserting them, the testimony about petitioner's assertion of such rights would have filled that bill. The prosecutor was clearly aware of this potential: he insisted on including the testimony about petitioner's silence, testimony Judge Takasugi deemed incidental, over defense objections and at the risk of reversal in an effort to overcome the presumption of innocence in petitioner's release from the custodial interrogation from which is girlfriend was not released.

The third of the <u>Olano</u> criteria is thus met. The fourth relative to fairness follows in light of the prosecutor's improper tactical use of the testimony about petitioner's silence. Accordingly, petitioner meets at least the criterion of debtability regarding the self-incrimination issue, thus requiring a COA. Petitioner contends he meets the other criteria with respect to this issue as well, further

7

demonstrating the desirability of a COA regarding this issue.

(3) Fifth Amendment Failure-to-Give-Accomplice-Jury-Instruction Violation. In the words of the order denying petitioner's §2255 motion, "[I]t is uncontroverted that neither instruction 4.10 (Testimony of Witness Receiving Benefits) nor 4.11 (Testimony of Accomplice) [Ninth Circuit Manual of Model Jury Instructions, 2000 Edition] were given to the jury." As with the self-incrimination issue, the first two Olano criteria are thus met: there was an error and it was plain. The order merely insists that because there was "ample" evidence that "corroborated" the informants, the error was not sufficiently prejudicial to implicate petitioner's substantial rights.

The trial court's failure to give the benefitted witness and accomplice jury instructions was, however, prejudicial in a substantial, rights-implicating way because the error was important to the case. The informants' testimony was not as dispositive as the order suggests. It was only corroborated by the other evidence to the extent the informants' testimony was tailored to it where it could have been spun differently. In light of petitioner's girlfriend's exculpatory evidence, for example, Informants Santos's and Sabangan's important inculpatory testimony was not only uncorroborated, it was contradicted. The outcome thus hinged on an assessment of the informants' credibility, which could not be adequately made without the omitted instructions. See U. S. vs. Bernard, 635 F.2d 854, 857-58 (9 Cir. 1980)(Mere admonishment by defense counsel in closing cautioning jury

8

about how it should consider such testimony as suspect is not sufficient.); U. S. vs. Martin, 489 F.2d 674, 677 (9 Cir. 1973)(If the testimony is important, the failure to give the instruction is plain error.).

The 2255 order relies on U. S. vs. Holmes, 229 F.3d 782, 788 (9 Cir. 2000) for the proposition that the omitted accomplice/informer instructions are only necessary if the defendant's guilt rested almost entirely on the testimony and the other evidence linking the defendant to the criminality is weak. In Holmes, eyewitness testimony from two other witnesses plus surveillance camera photos identifying the defendant were substantial evidence connecting him to the bank robbery. And the informant testified in detail about her payment by the FBI for her information. Petitioner's situation is closer to that of Guam vs. Dela Rosa, 644 F.2d 1257, 1259-60 (9 Cir. 1980)(per curiam), where failure to give the instructions was found to be reversible error.

In Dela Rosa, the informant's testimony that the defendant had admitted the crime to him was the primary evidence against the defendant. In petitioner's case, it was only the informants' testimony about petitioner's connection to the other evidence that tipped the balance between the pictures of him as an active participant in the drug distribution scheme and someone whose drug habit and social connections entangled him in the margins of others' criminality. (See pages 6-7, supra.) Without that testimony, or with appropriate instructions regarding that testimony (which petitioner requested and the prosecution opposed as

9

amounting to the same thing), petitioner's position would have been the same as Dela Rosa's: plenty of evidence that crime had been committed, but virtually none as to the defendant's actual role. See also <u>U.S. vs. Patterson</u>, 648 F.2d 625, 631 (9 Cir. 1981). And the testimony about the benefits the informants received was almost nonexistent.

In light of the foregoing, it is apparent that at least a different decision could have been reached. A COA regarding the issue is thus appropriate.

(4) Lack of Subject Matter Jurisdiction Regarding 18 USC §§922(g)(1) and (3). The order denying petitioner's §2255 motion contends that petitioner ignores the law of this circuit subsequent to <u>U. S. vs. Lopez</u>, 514 U.S. 549 (1995), <u>U. S. vs. Morrison</u>, 529 U.S. 598 (2000), and <u>Jones vs. U. S.</u>, 529 U.S. 848 (2000), upon which petitioner primarily relies for his position that the trial court lacked subject matter jurisdiction over petitioner's alleged §922(g) violations. On the contrary, petitioner goes to substantial length to distinguish his case from the reasoning of that line of cases and to show why it should not be applied to him. The order also erroneously contends that because testimony was that the firearm in question was manufactured in California and seized in Guam, it satisfied the "minimal nexus to interstate commerce" requirement for a charge and conviction under §922(g).

In <u>Lopez</u>, supra, the Supreme Court invalidated 18 USC §922(q)(1)(A), proscribing possession of a firearm in a school zone, as not meeting the substantial nexus to

10

interstate commerce requirement for regulation under the Commerce Clause. That suggests it could reach a different decision regarding other firearms provisions--such as petitioner's 922(g) charge--especially given expectations that the Court might want to bring Commerce Clause application to firearms into line with all its other jurisprudence using the substantial nexus standard in reviewing applications of the clause. That suggestion has particular force in this Apprendi/Blakeley/Booker/Ameline era. (Apprendi vs. New Jersey, 520 U.S. 466 (2000); Blakeley vs. Washington, 124 S.Ct. 2531 (2004); U. S. vs. Booker, 125 S.Ct. 738 (2005); U. S. vs. Ameline, 400 F.3d 636 (9 Cir. 2005).)

The Ninth Circuit Law on the subject traces back to two decisions that miss the transition between pre and post Lopez and pre and post 18 USC §1202(a)(1), §922(g)'s predecessor. Citing U. S. vs. Sherbondy, 865 F.2d 996, 1000-01 (9 Cir. 1988), which applied the §1202(a) standard from Scarborough vs. U. S., 431 U.S. 563 (1977) to §922(g), U. S. vs. Hanna, 55 F.3d 1462 (9 Cir. 1995), concluded that "[s]ection 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutuionality under the law." at 1462 n.2. This established Ninth Circuit law on the subject in the post Lopez era. Subsequent cases have followed Hanna's lead. See, for example, U. S. vs. Collins, 61 F.3d 1379, 1383-84 (9 Cir. 1995); U. S. vs. Davis, 242 F.3d 1162, 1162-63 (9 Cir. 2001); U. S. vs. Cortes, 299 F.2d 1030, 1037 n.2 (9 Cir. 2002).

11

The order denying petitioner's §2255 motion cites several additional cases to the same effect. To the list the order adds: U. S. vs. Jones, 231 F.3d 508 (9 Cir 2000); U. S. vs. Rosseau, 257 F.3d 925 (9 Cir. 2001); U. S. vs. Davis, supra; U. S. vs. Carrasco, 257 F.3d 1045 (9 Cir. 2001); and U. S. vs. Gonzales, 307 F.3d 906 (9 Cir. 2002). But these cases merely further illustrate petitioner's point: that this line is the fruit of a bad seed, a nonadaptive jurisprudential mutation spawned by the interplay of Scarborough with Lopez, the old §1202(a) with the new §922(g), and, especially, Sherbondy with Hanna. Jones relies on Hanna. Rosseau relies on Hanna. Davis relies on Hanna and Jones. And Carrasco and Gonzales rely on Davis.

Moreover, Cortes, even while binding itself to precedent, notes that the vitality of Scarborough engenders significant debate. It refers readers to U. S. vs. Coward, 151 F.Supp.2d 544, 554-55 (EDPA 2001), which expected reversal, and to Brent E. Newton, "Felons, Firearms, and Federalism: Reconsidering Scarborough in Light of Lopez", 3 J. App. Prac. and Process, 671, 683-84 (2001), in which the author doubts that Scarborough remains good law after Lopez.

Finally regarding this issue, petitioner was charged with violating §§922(g)(1) and (3). But the charges did not meet the jurisdictional requirement that the firearm in question had moved in interstate commerce. The §2255 order alleges that the entirety of the evidence proving it had was an agent's testimony that the gun was manufactured in California and seized in Guam. The charges and evidence are

12

thus both facially deficient. 18 USC §921(a)(2) specifically excludes from interstate commerce "commerce between places within the same State but through any place outside the State". Federal Criminal Code and Rules, West Group, 2005. The indictment did not allege the firearm in question was not moving from California, its place of manufacture, to some other place in California but through Guam. The alleged proof does not even suggest it was not. Hence, the court lacked jurisdiction to try the charge or impose a sentence upon it.

Thus, it is apparent that jurists of reason could reach a different conclusion, even if none have yet done so. In this regard, Lopez can be viewed as analogous with respect to firearms and the Commerce Clause to Apprendi with respect to sentencing factors--the thin edge of the wedge of change. Verily, the Ninth Circuit has characterized Apprendi's daughter, Booker, supra, which calls into question not merely circuit precedent, but Supreme Court decisions, as a "sea change" in the law. Ameline, supra, at 400 F.3d at 652. While Lopez may not yet have had that effect, it may well.

(5) Ineffective Assistance of Trial Counsel. During the course of petitioner's trial, appointed counsel failed to: (1) object to the failure of the government to bring petitioner to trial within 70 days as mandated by the Speedy Trial Act, 18 USC §3103 et seq. (See U. S. vs. Hall, 181 F.3d 1507, 1061 (9th Cir. 1999).); (2) adequately pursue an objection to the admission of testimony about petitioner's request for counsel and subsequent silence during a custodial police interrogation (See U. S. vs. Velarde-Gomez, 269 F.3d

13

1023, 1029 (9 Cir. 2001).); (3) proffer a cautionary informer/accomplice jury instruction (See <u>Freeman vs. Class</u>, 95 F.3d 639, 641 (8 Cir. 1996).); or (4) contest the court's jurisdiction regarding the firearms violations absent demonstration of the required interstate commerce element of §922(g).

These mistakes at trial were exacerbated after the trial when counsel failed to preserve any of the egregious errors for appeal. Indeed, none of these issues were raised in a motion for a new trial and there is no reason other than gross error for their omission. There was no question of the errors being tactical or strategic. Therefore, the only conclusion consistent with the facts and circumstances is that counsel's representation was constitutionally deficient.

Each of these errors is clearly prejudicaial because they resulted in a trial, convictions, and/or sentences petitioner should not have had to endure. In light of the foregoing questions about the case, it is apparent the conclusions surrounding it could and likely would have been different. The government contended petitioner's representation was zealous, and it may well be considered so in the areas it was undertaken. Petitioner does not contend that what counsel did do was deficient; he contends that what counsel did not do was prejudicially deficient and therefore ineffective within the meaning of <u>Strickland vs. Washinngton</u>, 466 U.S. 668, 687 (1984).

Petitioner's trial counsel's performance thus

meets Strickland's criteria for ineffectiveness, removing the procedural bars to petitioner pursuing the isues herein further. The foregoing also shows at least that the matter is debatable among jurists of reason and that courts could conclude differently with respect to the ineffectiveness issue. A COA is therefore warranted.

(6) Ineffective Assistance of Appellate Counsel. Petitioner's appellate counsel did not raise on direct appeal the same issues petitioner raises herein and which his trial counsel's performance was unconstitutionally deficient for failing to raise pre-trial, during trial, or at sentencing, as appropriate. In order to bring these issues on appeal, appellate counsel would have had to address the ineffectiveness of trial counsel in failing to preserve them to establish cause and prejudice for the defaults under Strickland, supra. See Coleman vs. Thompson, 501 U.S. 722 (1991). Claims of ineffective assistance are generally limited to collateral review and ordinarily will not be considered on direct appeal. See, e.g., U.S. vs. Gambino, 788 F.2d 938, 950 (3 Cir. 1986). There are, however, exceptions to this rule. Included among them are when the appellant has new counsel and the trial record is sufficiently developed. U. S. vs. Finley, 245 F.3d 199, 204 (2 Cir. 2001). This case meets the criteria for this exception.

Petitioner was represented by new counsel on appeal, a matter of record. As the foregoing plus voluminous other filings relating to petitioner's §2255 motion, trial transcripts, and other information clearly show, the record

15

regarding the issues petitioner raises herein was well developed at the time of petitioner's appeal. Indeed, that record was adequate for Judge Takasugi to rule on petitioner's §2255 motion without a hearing or any additional informatiuon that may have been developed for or on direct appeal, had the issues been appropriately raised earlier.

The issues were thus ripe for review prior to direct appeal, yet appellate counsel failed to raise them. Counsel's failure to raise any arguable issues in the appellate brief is ineffective assistance. <u>Delgado vs. Lewis</u>, 233 F.3d 976, 980-82 (9 Cir. 2003). See also <u>Mason vs. Hanks</u>, 97 F.3d 887, 894 (7 Cir. 1996); <u>Cargill vs. Mullin</u>, 317 F.3d 1196, 1205 (10 Cir. 2003). Petitioner need not prove that he would have prevailed absent the error but only show a reasonable probability the outcome would have been different; he need not show that counsel's deficient conduct more likely than not altered the outcome of the case. <u>Brownlee vs. Haley</u>, 306 F.3d 1043, 1059-60 (11 Cir. 2002), quoting <u>Strickland</u>, supra. See also <u>Miller vs. Keeney</u>, 882 F.2d 1428, 1434 (9 Cir. 1989).

Petitioner's appellate counsel's performance thus meets Strickland's criteria for ineffectiveness, removing the procedural bars to petitioner pursuing the issues herein further. The foregoing also shows that the matter is debatable among jurists of reason and that courts could conclude differently with respect to the appellate ineffectiveness issue. A COA is therefore warranted.

This Motion for a Certificate of Appealability

16

does not attempt to restate in their entirety the arguments petitioner has made in his Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC §2255 and Defendant's Traverse to Government's Response to Defendant's Motion to Vacate, Set Aside, of Correct Sentence Pursuant to 28 USC §2255. Petitioner assumes the court is familiar with them and so incorporates them herein only by reference. Petitioner would like to emphacize, however, that the Supreme Court has held that a COA should issue where reasonable jurists could find the district court's assessment of the constitutional claims is debatable. <u>Slack vs. McDaniel</u>, 529 U.S. 473 (2000). Petitioner feels he has met that burden with respect to each of the foregoing issues and therefore requests a Certificate of Appealability for each of them.

    I, Isagani Dela Peña, petitioner pro se in the above-entitloed action, declare under penalty of perjury pursuant to 28 USC §1746 that the foregoing is true and correct.

DATE: 8-8-05

Respectfully submitted,

*Isagani Dela Peña*

Isagani Dela Peña, Jr.

pro se